Suit by Daniel L. Taradash and wife against Supreme Development Corporation to cancel a 99-year lease of realty and recover possession thereof, wherein defendant filed a counterclaim seeking rescission and restitution of money paid plaintiffs. From a decree in favor of defendant, plaintiffs appeal.
Decree reversed.
The appellants, as plaintiffs, brought a bill to cancel a 99-year lease and, upon cancellation being decreed, sought a writ of assistance placing them, as lessors, in possession of the premises, and other affirmative relief.
The appellee, as defendant and lessee, answered and filed a counterclaim to the bill denying delivery of possession of the premises to the lessee and praying for rescission and restitution of the money paid to plaintiffs.
The Master found the equities to be with the plaintiffs, but the Chancellor found them to be with the lessee-defendant, whereupon the plaintiffs appealed.
The question to be decided is whether the appellee-lessee has obtained full possession of the premises. The appellants contend that the lessee has accepted the lessors' tenant, who is in possession, as its subtenant, which acceptance the appellee denies. On this point the case is pivoted.
The Master was authorized to take testimony and to make findings of fact, and his ultimate findings of fact, to which the defendant filed exceptions, were as follows:
1. The Bill of Complaint states a cause of action, and the equities are with the plaintiffs.
2. The defendant, Supreme Development Corporation, accepted possession of the premises as of June 1, 1946, when they accepted Max Feldish as their tenant, and the lease became effective on that date.
3. The defendant failed to make the rental payment of $18,000 due and payable on June 1, 1947, and the plaintiffs made demands on the defendant for the same. The defendant failed to pay the same for the 30-day period prescribed in the lease and the lease was thereafter lawfully terminated by the plaintiffs.
4. The plaintiffs are entitled to a declaratory decree that the lease, the subject matter of this dispute * * * has been lawfully terminated, and cancelling the same of record; that the plaintiffs are entitled to possession of the property; that the defendant is not entitled to return of any part of the security provided for in Article VI of the lease, plaintiffs' Exhibit 1; and assessing the costs against the defendant.
To which findings of fact the defendant-appellee filed exceptions as follows:
1. The Master erred in finding that the equities of the cause are with the plaintiffs.
2. The Master erred in finding that the defendant accepted possession of the premises as of June 1, 1946.
3. The Master failed to take into account the fact that the plaintiffs did not prove real or apparent authority of Cy Wax *Page 578 
to act as an agent or officer of the defendant corporation.
4. The Master erred in failing to take into account the fact that the plaintiffs did not prove attornment.
5. The Master's opinion and recommendations did not follow the evidence adduced at the cause.
6. The Master erred in that he did not follow the law.
7. The Master erred in failing to follow the law in the case as adduced by the evidence before him.
The Chancellor, in respect to the exceptions to the Master's report, among other things, decreed:
"In considering the exceptions, this Court accepts the Special Master's findings of fact.
"It is felt, however, that the Master has misconstrued the legal effect of the facts, and has misapplied the facts to the law in certain respects pointed out below. For that reason, his conclusions (1) that defendants accepted possession as of June 1, 1946; (2) that defendant accepted Max Feldish as a tenant; and (3) that the defendant is in default under the main lease, are rejected by this Court, and exceptions to such findings or conclusions of the Master are hereby sustained; and accordingly
"It Is Hereby Ordered that the defendant's exceptions numbered 2, 4, 5, 6 and 7 are hereby sustained."
 * * * * * *
The defendant-appellee offered no testimony and the facts of this case as alleged by appellants and substantially established as found by the Special Master in Chancery, are these:
On January 7, 1946, the attorney, Milton Weiss, representing Simon B. Wax, wrote to appellants' attorney and advised him that his principal, Simon B. Wax, was going to organize a Florida corporation for the purpose of taking a 99-year lease on property owned by appellants, Daniel L. and Madeleine F. Taradash. The letter described the conditions agreed upon by the parties and stated that Bertman and Isen were the brokers. The corporation, Supreme Development Corporation, was subsequently formed and is the defendant herein.
Later, in January, 1946, a lease contract for 99 years was executed with Daniel L. and Madeleine F. Taradash as lessors and the Supreme Development Corporation as lessee. Simon B. Wax signed the lease as Secretary of the lessee corporation and Milton Weiss, his attorney, as President.
By the terms of the lease agreement, the lessors agreed to deliver possession of the entire premises to the lessee by June 1, 1946, the commencement date of the lease, and it was further agreed by the parties that in case possession of the entire premises was not delivered by November 1, 1946, then either party could cancel the lease by ten days' written notice. The foregoing stipulations were necessary because of the fact that part of the premises covered in the lease was occupied by a tenant of the lessor. The tenant, Max Feldish, had agreed with the lessors to vacate the premises by June 1, 1946, the date of expiration of his tenancy being May 31, 1946. To assure vacation of the premises by the tenant, lessors obtained from the OPA, with the consent of the tenant, a certificate relating to eviction. Thus the lessors felt assured of obtaining possession of the entire premises if not on June 1, at least by the November 1 dead line.
Early in June, 1946, lessors' attorney received a phone call from Milton Weiss, the attorney who represented Simon B. Wax in incorporating the Supreme Development Corporation and in the negotiations for the lease agreement, stating that his principals were having difficulty in getting possession of the premises from the tenant, Max Feldish. Lessors' attorney promised to look into the matter. This he did, and on June 13, 1946, he directed a letter on behalf of lessors to Milton Weiss. This letter informed Weiss that his (Weiss') principals, the lessee, had conferred with the tenant, Max Feldish, and, as a result of the negotiations had agreed to allow the tenant to remain on the premises for $125 per month rent, and had accepted a check in that amount as payment for the month of June; *Page 579 
furthermore, that the tenant had agreed with the appellee to put up a deposit of $1,000 to assure his removal at the termination of his lease. The check for rent was drawn payable to C. Wax (ostensibly Simon B. Wax, who formed defendant corporation and signed the lease as its secretary).
As a result of these negotiations, lessors' attorney informed Weiss, by the letter of June 13, 1946, that the lessee corporation had made Max Feldish its tenant and thereby had actually taken possession of the entire premises and, so far as the lessors were concerned, the lease was in effect, having commenced on June 1, 1946, and that lessees were bound to perform all of its terms.
The check made payable to C. Wax was subsequently endorsed by C. Wax and Sims Wax Sales Co. and cashed. During the ensuing months other checks similarly drawn were issued by Max Feldish and endorsed and cashed by C. Wax or Si Wax. One check bears the endorsement "rent 1461 Washington Avenue." The last check presented in evidence was for March, 1947.
On June 28, 1946, lessors, through their attorney, sent Milton Weiss the OPA certificate relating to eviction, upon the latter's request.
On July 2, 1946, Weiss, as attorney for defendant lessee, directed a letter to Max Feldish, stating that he represented the Supreme Development Corporation "who owns a lessee's interest" in the property, and that he had been instructed to institute eviction proceedings against him (Max Feldish).
Matters appear to have rested here for nearly a year, when, on April 16, 1947, plaintiffs-lessors received a letter from Simon B. Wax, in the style of Supreme Development Corporation, purporting to give ten days' written notice of lessee's intention to cancel the lease. The reason assigned by Aax for the election to cancel was lessors' failure to deliver possession of the entire premises by November 1, 1946, the dead line stipulated in the lease. Lessors responded to this letter through their attorney, calling attention to all the foregoing facts and stating that they considered lessee's attempt to elect to rescind the lease abortive, and demanding strict compliance with the lease.
On July 2, 1947, lessors made a further demand for the rental payment of $18,000, which was by the terms of the lease to be due and payable on June 1, 1947. They informed lessee of their determination to exercise their right to cancel the lease for failure to pay the rent unless payment was made within three days.
On July 12, 1947, lessors gave formal notice of their cancellation of the lease.
It came to the knowledge of the lessors some time after June 1, 1946, that a portion of the premises covered by the lease was being used by persons to them unknown, for the purpose of a parking lot. It was subsequently determined in the trial of this cause that Anna Berry, a sister of Simon B. Wax, had, with another, operated this business on the premises. Her deposition was taken and she testified that her brother, Simon B. Wax, had given her permission to use the property. Later she changed this and said her brother had told her it did not belong to him any more than to any one else. A portion of the premises was so used for a period of time subsequent to November 22, 1946.
Even aside from the evidence that defendant had entered into an agreement with Feldish whereby the latter was authorized to continue on the premises, defendant has by the acts of its agents estopped itself from asserting otherwise.
Early in June, 1946, appellants, through inquiry of their attorney, learned that defendant had begun negotiations with Feldish, and that Feldish had executed a check for rent in favor of Wax. They promptly notified defendant's representative of their view of these negotiations. Later in June, Mr. Weiss on behalf of defendant obtained from appellants the OPA certificate relating to eviction. This certificate represented appellants' license to bring proceedings to repossess the premises from Feldish in order to tender possession of the entire premises to defendant by the dead line. This certificate was never returned. In fact, defendant through its attorney wrote Feldish that it intended to start eviction proceedings against him. From June, 1946, to March, 1947, defendant's secretary continued to receive and cash checks from Feldish, *Page 580 
which were forwarded by Mr. Weiss, who was defendant's representative in Miami Beach. The knowledge of these agents was imputable to defendant. During all this period, nearly a year, defendant took no steps to inform appellants that they were mistaken in their conclusion as to attornment. They never denied this fact, and for this long period defendant's agents accepted rent which they try to assert now was not due to "it." Why did it not attempt to inform appellants of the true state of affairs, if in fact it were otherwise than appellants were led to believe? Why did not defendant return the OPA certificate to appellants? Why did defendant's agents not return Feldish's checks if he was not its tenant? There is no question but that all the facts led appellants to conclude that defendant had made Feldish its tenant. Thus they relied on appearances created by defendant and the latter cannot be heard now to assert that appellants should not have been mislead. It was its duty to correct appellants' misconception and its silence and continued course of action for nearly a year estops it from attempting to turn it to its own advantage now.
Upon the foregoing facts it appears that the equities were with the appellants and that the decree appealed was erroneous and should be reversed. It is so ordered.
Reversed.
ADAMS, C.J., and TERRELL, CHAPMAN, THOMAS and SEBRING, JJ., concur.
HOBSON, J., dissents.